# EXHIBIT A

IN THE CIRCUIT COURT FOR MONTGOMERY COUNTY, TENNESSEE

| | |
|---|---|
| AMY HINES ATUAH, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Docket No. CC16CV504 |
| ) | |
| CAPITAL BANK CORPORATION ) | |
| ) | |
| Defendant. ) | |
| ) | |

## COMPLAINT

COMES now Plaintiff, Amy Hines Atuah, by and through her counsel, and for her cause of action would state the following facts:

## JURISDICTION AND VENUE

1. This is a claim for gender discrimination under the Tennessee Human Rights Act, T.C.A. § 4-21-101, *et seq.*

2. This Court has jurisdiction of the cause in that the Defendant can be found doing business in Montgomery County, Tennessee, and this county is where most or all of the facts supporting Plaintiff's claims took place.

## PARTIES

3. Plaintiff, Amy Hines Atuah, is a female resident of Montgomery County, Tennessee.

4. Defendant, Capital Bank Corporation ("Capital Bank"), is a for-profit, foreign corporation formed in North Carolina and doing business in Tennessee. Its principal office is located at 4725 Piedmont Row Drive, Suite 110, Charlotte, North Carolina

1

28210. At all relevant times Plaintiff was employed at Capital Bank's Clarksville location, at 2786 Wilma Rudolph Boulevard.

5. Defendant may be served through its registered agent, Corporation Service Company, at 2908 Poston Avenue, Nashville, Tennessee 37203.

## FACTS

6. Plaintiff was employed by Defendant as a Branch Manager on or about April, 1, 2013, and continued in that role until she was terminated on or about May 15, 2015.

7. Plaintiff was informed that she was being terminated on the day she was to return to work after her 16-week maternity leave.

8. On or about May 15, 2015, Plaintiff arrived at Defendant's branch at her scheduled time of 8:00 a.m. Immediately upon arrival, Kimberly Wiggins ("Wiggins"), Consumer Market Manager for Middle Tennessee, called Plaintiff into her office and requested that Plaintiff have a seat.

9. Wiggins began a conversation with Plaintiff regarding the branch audit conducted on or about January 22, 2015, the same day Plaintiff's maternity leave began, pursuant to doctor's orders following an appointment that day.

10. Wiggins informed Plaintiff that the above-noted audit resulted in a failed grade. Wiggins reviewed the information provided on the Capital Bank Employee Counseling Summary dated May 15, 2015. Plaintiff discovered on page two (2) of the counseling summary, that this issue had not been previously addressed.

11. Plaintiff was not notified of either the audit results or the specific details pertaining to the score, while she was on maternity leave.

2

12. Plaintiff was then informed that, due to a previous (and unrelated) Performance Improvement Plan ("PIP") dated October 17, 2014, and executed on November 7, 2014, that termination was in effect. Plaintiff exited the meeting and left the branch within fifteen (15) minutes of her arrival.

13. Plaintiff had been placed on the PIP per the following reason: "We have serious concerns that your performance does not meet Capital Bank's performance standards for a Branch Manager with your experience and compensation level." However, based on Plaintiff's sales results that she drove in her branch, the PIP was unwarranted. Per the Capital Bank performance records—also called Branch Sales Scorecard—in September of 2014, the St. Bethlehem branch (Plaintiff's assigned branch) ranked #9 out of Defendant's 28 branches in Middle Tennessee, and #20 out of its 62 branches in Tennessee as a whole. In October 2014, Plaintiff's branch ranked #10 out of the 28 Middle Tennessee branches, and #25 out of the 62 branches in Tennessee as a whole; and in November 2014, it ranked #6 and #10, respectively. Plaintiff should not have been placed on a PIP.

14. Plaintiff was placed on the PIP very close in time to when she was discussing how long she planned to take off for her maternity leave.

15. When Wiggins asked Plaintiff how long she planned to take for maternity leave, Plaintiff informed her that she intended to take twelve (12) weeks. Wiggins then told Plaintiff she believed the time allowed was six (6) weeks. Plaintiff informed Wiggins that the Family and Medical Leave Act (FMLA) allows twelve (12) weeks for maternity leave. Wiggins then stated she believed that most women take six (6) weeks, and admitted that she could be wrong about that.

16. Plaintiff ultimately took off sixteen (16) weeks, as allowed by Tennessee law. She was informed of the 16-week allowance in Tennessee by Leslie Forney of Human Resources for Defendant's Tennessee region.

17. Plaintiff's doctor placed her on maternity leave on January 22, 2015 (prior to her anticipated start date of late February 2015), due to reasons beyond her control. She was experiencing pre-term labor, intensified by stress from her situation at work.

18. Upon the start of Plaintiff's maternity leave, she notified Terry Putnam ("Putnam"), the Corporate Benefits Manager in HR, that she would be taking the sixteen (16) weeks allowed by Tennessee law, as opposed to the twelve (12) weeks she initially intended. Plaintiff did not speak about this to Wiggins or Chris McDougal, Consumer Market Executive and Plaintiff's immediate supervisor.

19. Plaintiff was not contacted during her maternity leave, except by Putnam—in regard to her benefits, and her payments due to Defendant to continue those benefits. Plaintiff was never notified of the outcome of the branch audit; nor was she given any details while on maternity leave.

20. In Plaintiff's experience, any time there was a performance issue, the employee was given ample time to make the necessary corrections and changes. Plaintiff was not afforded this opportunity.

21. Each of the five Capital Bank branches located in Clarksville had a failed audit, yet Plaintiff was the only Branch Manager terminated. After Plaintiff's termination, she was informed by Regina Spicer, a former Capital Bank Branch Manager, that the St. Bethlehem branch had failed audits subsequent to that on January 22, 2015. Plaintiff's

4

history of audits while Branch Manager at the St. Bethlehem branch was satisfactory at minimum, and exemplary at best.

22. Each branch is audited multiple times annually. Bank documentation shows that failed audits were not the standard outcome for the St. Bethlehem branch. All audits performed prior to the failed audit of January 2015, were performed by Lynn Stidham, now retired. Diane Mears ("Mears") performed the audit of January 2015. This was Mears' first audit on the St. Bethlehem branch.

23. The Employee Counseling Summary noted the following, with regard to the issue of wire transfer documentation: "We were only able to locate file folders for wires that had been processed during November and December. The branch could not locate the notebook that contained wires processed during September, October, and January. One exception per month was given due to the fact that we could not review any of the wire forms during these months." However, when Plaintiff went to the branch on or about March 21, 2015, to close her accounts, she saw the same wire transfer book noted as missing in the Summary notes. Plaintiff took a photo of the binder. The binder is not a replacement; but, in fact, the same binder that stored the required information.

24. Plaintiff's Information Security Section of the Employee Counseling Summary stated, "Multiple files and notebooks containing customer confidential information were left on desktops and in unlocked desks and credenza drawers in your office, the Personal Banker's office, as well as the training room." However, this description is misleading as to the actual events of January 22, 2015. On that day, Plaintiff had a meeting scheduled first thing that morning, as well as a doctor's appointment that afternoon. Plaintiff arrived in the morning to greet the auditor and inform her of the day's schedule. The

auditor informed Plaintiff that she should attend her appointments. Plaintiff then gathered what she could for the auditor and left the branch in a condition such that the auditor and other employees could easily locate required information. When Plaintiff returned from her doctor's appointment (where she was directed to begin her maternity leave early due to pre-term labor), she provided her keys to the internal control specialist and another employee. Plaintiff was told everything would be taken care of.

## COUNT ONE
### Violations of the Tennessee Human Rights Act

25. Defendant's conduct described herein constitutes unlawful discriminatory practices on the part of Defendant in violation of the Tennessee Human Rights Act, T.C.A. § 4-21-101, *et seq*.

26. Defendant is a "person" as defined by the Tennessee Human Rights Act.

27. Defendant did segregate or classify Plaintiff based upon her gender in a way that would tend to deprive her of employment opportunities, in violation of the Tennessee Human Rights Act.

28. Defendant did discriminate intentionally and maliciously against Plaintiff based upon her gender and her pregnancy.

29. Plaintiff experienced an adverse employment action in that she was terminated because of her pregnancy and her FMLA maternity leave.

30. As a direct and proximate result of Defendant's violation of the Tennessee Human Rights Act, Plaintiff has suffered and continues to suffer the loss of past, present, and future wages and the loss of benefits of employment, as well as embarrassment, humiliation, and mental and physical distress.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands a Judgment against the Defendant and other remedies including, but not limited to, the following. That:

1. Proper process issue, along with a copy of this Complaint, requiring the Defendant to appear and answer;

2. Upon a hearing of this cause, Plaintiff be awarded back pay for the loss of past earnings;

3. Plaintiff be awarded front pay for the loss of future earnings;

4. Plaintiff be awarded compensatory damages, including damages for humiliation and embarrassment;

5. Plaintiff be awarded pre- and post-judgment interest;

6. Plaintiff be awarded her costs in pursuing this matter;

7. Plaintiff have such other and further general relief to which she may show herself entitled; and,

8. Plaintiff demands a jury to try this cause.

Respectfully submitted,

**ANDY L. ALLMAN & ASSOCIATES**

*[signature]*

Andy L. Allman, BPR # 17857
131 Saundersville Road, Suite 110
Hendersonville, Tennessee 37075
Phone: (615) 933-0110
Fax: (615) 265-8766
andy@andylallman.com

| Montgomery County Circuit Court<br>2 Millenium Plaza, Suite 115<br>Clarksville, TN 37040<br>(931) 648-5700 | **STATE OF TENNESSEE**<br>**CIVIL SUMMONS**<br>page 1 of 2 | Case Number<br>CC16CV564 |
|---|---|---|

**Amy Hines Atuah v Capital Bank Corporation**

Served On:

Capital Bank Corporation
c/o Corporation Service Company
2908 Poston Avenue
Nashville, Tennessee 37203

You are hereby summoned to defend a civil action filed against you in Montgomery County Circuit Court, Montgomery County, Tennessee. Your defense must be made within thirty (30) days from the date this summons is served upon you. You are directed to file your defense with the clerk of the court and send a copy to the plaintiff's attorney at the address listed below. If you fail to defend this action by the required date, judgment by default may be rendered against you for the relief sought in the complaint.

Issued: 3/30/16

_Susan Chadwick_
Clerk / Deputy Clerk

Attorney for Plaintiff: Andy L. Allman, Allman & Associates
131 Saundersville Rd., Ste 110, Hendersonville, TN 37075 (615) 933-0110

### NOTICE OF PERSONAL PROPERTY EXEMPTION

TO THE DEFENDANT(S): Tennessee law provides a ten thousand dollar ($10,000) personal property exemption as well as a homestead exemption from execution or seizure to satisfy a judgment. The amount of the homestead exemption depends upon your age and the other factors which are listed in TCA §26-2-301. If a judgment should be entered against you in this action and you wish to claim property as exempt, you must file a written list, under oath, of the items you wish to claim as exempt with the clerk of the court. The list may be filed at any time and may be changed by you thereafter as necessary; however, unless it is filed before the judgment becomes final, it will not be effective as to any execution or garnishment issued prior to the filing of the list. Certain items are automatically exempt by law and do not need to be listed; these include items of necessary wearing apparel (clothing) for your self and your family and trunks or other receptacles necessary to contain such apparel, family portraits, the family Bible, and school books. Should any of these items be seized you would have the right to recover them. If you do not understand your exemption right or how to execute it, you may wish to seek the counsel of a lawyer. Please state file number on list.

Mail list to    Montgomery County Circuit Court Clerk, 2 Millenium Plaza, Suite 115, Clarksville, Tennessee 37040

### CERTIFICATION (IF APPLICABLE)

I, Cheryl Castle, Circuit Court Clerk of Montgomery County do certify this to be a true and correct copy of the original summons issued in this case.

Date: _____    _____
Clerk / Deputy Clerk – Montgomery County Circuit Court

OFFICER'S RETURN: Please execute this summons and make your return within ninety (90) days of issuance as provided by law.

I certify that I have served this summons together with the complaint as follows:

Date: _____    By: _____

RETURN ON SERVICE OF SUMMONS BY MAIL: I hereby certify and return that on _____, I sent postage prepaid, by registered return receipt mail or certified return receipt mail, a certified copy of the summons and a copy of the complaint in the above styled case, to the defendant _____. On _____ I received the return receipt, which had been signed by _____ on _____. The return receipt is attached to this original summons to be filed by the Court Clerk.

Date: _____    _____
Notary Public / Deputy Clerk (Comm. Expires _____)

_____    _____
Signature of Plaintiff    Plaintiff's Attorney (or Person Authorized to Serve Process)
(Attach return receipt on back)

RECEIVED
MAR 29 2016

**ANDY L. ALLMAN & ASSOCIATES**
131 SAUNDERSVILLE ROAD, SUITE 110
HENDERSONVILLE, TENNESSEE 37075



CERTIFIED MAIL

7015 0640 0006 3338 3719



US POSTAGE $006.68
PITNEY BOWES
02 1P
0000612755 APR 12 2016
MAILED FROM ZIP CODE 37075

Capital Bank Corporation
c/o Corporation Service Company
2908 Poston Avenue
Nashville, Tennessee 37203